IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| SHAMPOIRE VALENTINO ORANGE, | |
| Plaintiff, | CIVIL ACTION NO.: 2:18-cv-1 |
| v. | |
| COL. JUDY LOWE; SERGEANT ANTONIO JONES; and SERGEANT ERIC ROZIER, | |
| Defendants. | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on Defendants' unopposed Motion for Summary Judgment, construed as a Motion to Dismiss.[1]  Docs. 59, 67.  For the following reasons, I

---

[1] Defendants' Motion is docketed as a Motion for Summary Judgment; however, Defendants argue dismissal is appropriate because Plaintiff failed to exhaust his administrative remedies.  See Docs. 59, 67.  In the Eleventh Circuit, exhaustion of administrative remedies is a matter in abatement that generally does not address the merits of the case.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (The first step of Turner "is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c)")  Thus, the exhaustion defense "is not ordinarily the proper subject for a summary judgment" but instead "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  Id. at 1374–75.  Because the defendant must raise exhaustion in a motion to dismiss, the Eleventh Circuit treats failure to exhaust as an unenumerated defense pursuant to Federal Rule of Civil Procedure 12(b).  Id. at 1375 (holding "exhaustion should be decided on a Rule 12(b) motion to dismiss" even though "motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b)").  For this reason, I construe this portion of Defendants' Motion for Summary Judgment as a Rule 12(b) motion to dismiss for failure to exhaust administrative remedies.

Additionally, Defendants initially filed their Motion on January 12, 2021.  Doc. 59.  However, the brief accompanying their Motion contained a citation to an affidavit on which Defendants no longer intended to rely.  Doc. 59-2.  Defendants then submitted a corrected brief, containing appropriate citations, as well as a corrected statement of material facts, in response to a Court Order.  See Docs. 65–67.  Though Defendants updated the citation in their brief, the substance of the brief is otherwise identical.  Further, Defendants did not re-submit the exhibits supporting their brief.  Thus, Defendants' brief and statement of material facts accompanying their Motion is docketed separately from the affidavits and declarations which support their Motion.  Docs. 59, 67.

**RECOMMEND** the Court **GRANT as unopposed** Defendants' construed Motion to Dismiss, **DISMISS** Plaintiff's Amended Complaint for failure to exhaust available administrative remedies and for Plaintiff's failure to follow this Court's Order, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.[2]

## PROCEDURAL HISTORY

Plaintiff initially filed this case as a writ of habeas corpus but asserted claims that sounded in 42 U.S.C. § 1983.  Doc. 1.  The Court directed Plaintiff to submit an Amended Complaint, using the appropriate 42 U.S.C. § 1983 Complaint form.  Doc. 4.  Plaintiff complied with the Court's Order and filed his Complaint, contesting certain events allegedly occurring while he was being held at the Glynn County Detention Center in Brunswick, Georgia.  Id.  Plaintiff then filed an Amended Complaint.  Doc. 11.  After conducting frivolity review, the Court dismissed Plaintiff's claims against former Defendants Glynn County Detention Center and Corbett.  Doc. 17.  However, Plaintiff was permitted to proceed on his harassment claim against Defendant Lowe and excessive force claims against Defendants Rozier and Jones.

---

[2]  A "district court can only dismiss an action on its own motion as long as the procedure employed is fair . . . .  To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond."  Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted).  A magistrate judge's report and recommendation provides such notice and opportunity to respond.  See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating a party has notice of a district court's intent to sua sponte grant summary judgment where a magistrate judge issues a report recommending the sua sponte granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting report and recommendation served as notice claims would be sua sponte dismissed).  This Report and Recommendation constitutes fair notice to Plaintiff his suit is due to be dismissed.  As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the presiding district judge will review de novo properly submitted objections.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

Defendants Lowe, Rozier, and Jones now move for summary judgment and dismissal as to Plaintiff's claims. Docs. 59, 67.

## BACKGROUND

During the events forming the basis of Plaintiff's allegations, Plaintiff was incarcerated at the Glynn County Detention Center in Brunswick, Georgia. Doc. 67-1 at 1; Doc. 11. On November 26, 2017, jail officials at Glynn County Detention Center discovered a hidden razor blade in the pages of Plaintiff's bible. Doc. 67-1 at 2, 4; Doc. 59-8 at 1–3. Following the discovery of the razor blade, Defendant Lowe ordered jail officials to search Plaintiff's cell on a regular basis. Doc. 67-1 at 4; Doc. 59-8; Doc. 59-12 at 32. One month later, on December 26, 2017, Defendant Lowe ordered officers to resume normal procedures for cell searches regarding Plaintiff's cell. Id. During Plaintiff's 120-day stay at Glynn County Detention Center, Plaintiff's cell was searched less than 20 times. Doc. 59-12.

On December 16, 2017, during this period of increased cell searches, Defendant Rozier went to Plaintiff's cell and ordered Plaintiff to get up so he could search his cell. Doc. 67-1 at 2; Doc. 59-15 at 1; Doc. 61 at 10. Defendant Rozier ordered Plaintiff to hurry. Doc. 67-1 at 2; Doc. 61 at 11. When Plaintiff failed to comply, Defendant Rozier drew his taser in an attempt to gain compliance. Doc. 67-1 at 2; Doc. 61 at 11. Plaintiff then grabbed a blanket and stated, "[M]an, you ain't going to shoot me." Doc. 67-1 at 2; Doc. 61 at 11; Doc. 59-15.

The encounter escalated further when Plaintiff refused to put his hands through the flap in his cell in order to be handcuffed for the search. Doc. 67-1 at 2; Doc. 67-15 at 1; Doc. 61 at 11, 17; Doc. 59-15. Instead of placing his hands through the flap to be handcuffed, Plaintiff jammed the flap with the blanket and then used his mattress to block his tray flap, preventing sight or access to his cell. Doc. 67-1 at 2; Doc. 59-4 at 1; Doc. 59-15 at 1; Doc. 61 at 11. Defendant

Rozier pulled the blanket out of the cell, then fired his taser through the flap but did not hit Plaintiff.  Doc. 67-1 at 2; Doc. 61 at 11.  At this point, Defendant Jones arrived with his taser drawn and requested Plaintiff put his hands through the flap, and Plaintiff complied.  Doc. 67-1; Doc. 59-4 at 1–2; Doc. 61 at 12.  Defendants Jones and Rozier were then able to access Plaintiff's cell and place Plaintiff in restraints.  Doc. 67-1 at 3; Doc. 59-4 at 2; Doc. 61 at 12–13.  However, when Defendants Jones and Rozier attempted to escort Plaintiff out of his cell, he again began resisting by pushing back against Defendants Jones and Rozier.  Doc. 67-1 at 3; Doc. 59-4 at 2; Doc. 59-15 at 1; Doc. 61 at 13.

During this period of struggle and non-compliance, Defendant Jones pressed his taser against Plaintiff's back.  Doc. 59-4 at 2; Doc. 61 at 14.  Defendant Jones' taser then misfired, discharging without a trigger pull, and Plaintiff was hit by the taser's prongs.  Doc. 59-1 at 3; Doc. 59-4 at 2; Doc. 59-15 at 1; Doc. 61 at 14.  Plaintiff was continuing to resist Defendants' orders and pushing back against Defendant Rozier at the time the taser discharged.  Doc. 59-4 at 2; Doc. 59-15 at 1; Doc. 61 at 13–14.  After the taser discharged and hit Plaintiff in the lower back, Plaintiff laid on the ground and stopped resisting.  Doc. 59-4 at 2.  Defendant Jones removed the prongs from Plaintiff's back.  Id.; Doc. 61 at 14.  Plaintiff was seen by the medical department the morning following the incident, and two puncture wounds were visible where the taser contacted Plaintiff.  Doc. 59-4 at 2; Doc. 59-9 at 1; Doc. 61 at 14–15.  Two days later, Plaintiff again received medical attention, and there were no signs of injury at the taser site.  Doc. 67-1 at 4; Doc. 59-4 at 2; Doc. 59-9 at 1.

Plaintiff filed two grievances related to the incident on December 16, 2017, but never filed any grievances related to his harassment and excessive-search allegations against Defendant Lowe.  Doc. 67-1 at 4; Doc. 59-3 at 2; Doc. 59-13; Doc. 61 at 14–15, 18.  The Glynn County

Detention Center grievance procedures provides that "upon receiving formal response of the grievance, the inmate has three calendar days to accept the findings and action taken, and so acknowledge by signature," or appeal the decision on the grievance.  Doc. 59-3 at 1–2.  "If the inmate appeals the decision, he is to provide written reasons on the grievance form and return it to the Grievance Coordinator."  Id.  Plaintiff received a response to both grievances but failed to appeal either grievance response.[3]  Doc. 67-1 at 4; Doc. 59-3 at 2.  Plaintiff testified he was aware of the jail's grievance process.  Doc. 67-1 at 5; Doc. 61 at 18–21.

## DISCUSSION

The Court must now determine how to address Defendants' construed Motion to Dismiss for Plaintiff's failure to exhaust his administrative remedies and Plaintiff's failure to follow this Court's Order.

**I.    Plaintiff's Failure to Exhaust**

Defendants argue Plaintiff's Amended Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to suing Defendants, as required by the Prison Litigation Reform Act ("PLRA").  Doc. 67-2 at 21–24.  First, Defendants Jones and Rozier argue Plaintiff failed to appeal the denial of his grievances, and second, Defendant Lowe argues Plaintiff never filed a grievance related to the search of his cell.  Id.

**A.    PLRA's Exhaustion Requirements**

Under the PLRA, an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions.  42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S.

---

[3]    Plaintiff testified he "appealed" the denials of grievances, but it is clear from his testimony he merely filed an additional grievance through the facility's kiosk and did not appeal the denials in accordance with the Standard Operating Procedure.  Doc. 61 at 19–20.

5

199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under

that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

The procedural steps prisoners must follow to fully exhaust are set out by their prison's administrative grievance policies. Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison."). Proper exhaustion requires prisoners do more than simply initiate a grievance; they must correctly follow all procedural rules set out in the institution's policy—including time limits—and must appeal any denial of relief through all levels of review that

7

comprise the agency's administrative grievance process. Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); Sewell, 2007 WL 201269, at *4 (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.     Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA. . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari, 729 F. App'x at 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082. While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust. . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use

8

are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.;

see also Bracero, 2018 WL 3861351, at *1.  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust."  Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust."  Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings."  Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### C. Applying Turner

As stated above, Defendants argue Plaintiff's Amended Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to suing Defendants, as required by the PLRA.  Doc. 67-2 at 21–24.  First, Defendants Jones and Rozier argue Plaintiff failed to appeal the denial of his grievances in accordance with Glynn County Detention Center's policy, and second, Defendant Lowe argues Plaintiff never filed any grievance related to the search of his cell.  Id.

#### 1. *Glynn County Detention Center's administrative grievance policy.*

At Glynn County Detention Center, if an inmate alleges a violation of his civil rights or complains of the commission of a prohibited act by a detention deputy, the inmate is referred to the formal grievance system.  Doc. 59-3 at 1; Doc. 59-11.  Inmates are required to file a written grievance within five days of discovery or when he reasonably should have discovered the incident.  Doc. 59-3 at 1; Doc. 59-11 at 2.  Once an inmate receives a formal response to the grievance, the inmate has three calendar days to accept the findings and action taken or appeal to the jail administrator.  Doc. 59-3 at 1–2; Doc. 59-11 at 3.  If an inmate chooses to appeal the decision, he must provide written reasons on the grievance form and return it to the jail administrator.  Doc. 59-3 at 1–2; Doc. 59-11 at 3.

#### 2. *Plaintiff failed to exhaust his administrative remedies.*

Defendants Jones and Rozier argue Plaintiff did not appeal his grievances related to his allegations they used excessive force when removing him from his cell, relying on the affidavit of Undersheriff Ron Corbett.  Doc. 67-2 at 21.  Corbett testifies that after reviewing the grievances submitted by Plaintiff, he has no record of Plaintiff appealing the two grievances related to Defendants Jones and Rozier.  Doc. 59-3 at 2.  Similarly, Defendant Lowe argues

11

Plaintiff did not file even an initial grievance related to his harassment claims against her based on the Corbett affidavit. Doc. 67-2 at 24; Doc. 59-3 at 2. Plaintiff does not respond directly to Defendants' arguments but, in his Complaint, he states he filed and appealed grievances related to his claims against Defendant Jones and Rozier. Doc. 5 at 11–12. Further, he explains he appealed his grievance by filing another grievance. Id.

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82. Plaintiff's allegations and Defendants Jones' and Rozier's allegations plainly conflict. Plaintiff contends he filed and appealed grievances; Defendants Jones and Rozier contend he did not. Therefore, the Court must take Plaintiff's version of the facts as true and determine whether, under those facts, Plaintiff properly exhausted his administrative remedies.

To give Plaintiff the full benefit of this approach, the Court considers Plaintiff's factual allegations concerning exhaustion in his Complaint and Amended Complaint. Docs. 5, 11. In those filings, Plaintiff contends he filed one or more grievances concerning Defendant Jones' use of his taser on Plaintiff. However, Plaintiff's allegations demonstrate he did not properly appeal the denial of the grievances. In his initial Complaint, Plaintiff states he failed to file any appeal. Doc. 1 at 4 (Plaintiff stating, "Every grievance is done on a computer with no option for a second appeal."); Id. at 5 ("The Glynn County Detention Center does not give inmates an option for second or third appeal to higher authority. Grievance done on computer (kiosk machine)."). In his Amended Complaint, Plaintiff claims he "appealed" the denial of his grievances but explains he did so only by filing an entirely new grievance; Plaintiff does not contend he "provide written reasons on the grievance form and return it to the Grievance Coordinator" as he was required to

do under the Standard Operating Procedure.[4]  Doc. 5 at 12.  As for Plaintiff's harassment claims against Defendant Lowe, Plaintiff makes no mention of filing any grievances related to that claim.

Taking Plaintiff's version of the facts as true, Plaintiff did not properly exhaust his administrative remedies.  Plaintiff failed to appeal his grievance in accordance with jail policy as to Defendants Jones and Rozier.  Instead of providing written reasons on the grievance form containing the findings from his initial grievance, Plaintiff filed a second, new grievance.  Id.  Thus, Plaintiff's failure to properly appeal his grievances constitutes failure to exhaust his administrative remedies.  Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("When a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.").  Likewise, Plaintiff failed to exhaust his administrative remedies as to Defendant Lowe because he never filed any grievances related to the conduct he complains of in this suit.

Therefore, Plaintiff failed to exhaust his administrative remedies as to the events giving rise to his Amended Complaint under step one of Turner.  Consequently, the Court should **GRANT** this portion of Defendants' construed Motion and **DISMISS** Plaintiff's Amended Complaint based on his failure to exhaust his administrative remedies.

## II.     Dismissal for Failure to Follow This Court's Order

Alternatively, Plaintiff's claims are due to be dismissed for failure to follow this Court's Order.  A district court may dismiss a plaintiff's claims sua sponte pursuant to either Federal

---

[4]     This statement is consistent with Plaintiff's deposition testimony, where he stated that when he received the initial denial, he merely filed another grievance rather than following the Standard Operating Procedure.  Doc. 61 at 19–20.

Rule of Civil Procedure 41(b) or the court's inherent authority to manage its docket. Link v. Wabash R.R. Co., 370 U.S. 626 (1962);[5] Coleman v. St. Lucie Cnty. Jail, 433 F. App'x 716, 718 (11th Cir. 2011) (citing Fed. R. Civ. P. 41(b) and Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005)).  In particular, Rule 41(b) allows for the involuntary dismissal of a plaintiff's claims where he has failed to prosecute those claims, comply with the Federal Rules of Civil Procedure or local rules, or follow a court order.  Fed. R. Civ. P. 41(b); see also Coleman, 433 F. App'x at 718; Sanders v. Barrett, No. 05-12660, 2005 WL 2640979, at *1 (11th Cir. Oct. 17, 2005) (citing Kilgo v. Ricks, 983 F.2d 189, 192 (11th Cir. 1993)); cf. Local R. 41.1(b) ("[T]he assigned Judge may, after notice to counsel of record, *sua sponte* . . . dismiss any action for want of prosecution, with or without prejudice[,] . . . [based on] willful disobedience or neglect of any order of the Court." (emphasis omitted)).  Additionally, a district court's "power to dismiss is an inherent aspect of its authority to enforce its orders and ensure prompt disposition of lawsuits."  Brown v. Tallahassee Police Dep't, 205 F. App'x 802, 802 (11th Cir. 2006) (quoting Jones v. Graham, 709 F.2d 1457, 1458 (11th Cir. 1983)).

It is true dismissal with prejudice for failure to prosecute is a "sanction . . . to be utilized only in extreme situations" and requires a court to "(1) conclud[e] a clear record of delay or willful contempt exists; and (2) mak[e] an implicit or explicit finding that lesser sanctions would not suffice."  Thomas v. Montgomery Cnty. Bd. of Educ., 170 F. App'x 623, 625–26 (11th Cir. 2006) (quoting Morewitz v. West of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.), 62 F.3d 1356, 1366 (11th Cir. 1995)); see also Taylor v. Spaziano, 251 F. App'x 616, 619 (11th Cir.

---

[5] In Wabash, the Court that a trial court may dismiss an action for failure to prosecute "even without affording notice of its intention to do so." 370 U.S. at 633.  Nonetheless, in the case at hand, the Court advised Plaintiff his failure to comply with the Court's Order or to respond to the Motion could result in judgment against him.  Doc. 60.

2007) (citing Morewitz, 62 F.3d at 1366).  By contrast, dismissal *without* prejudice for failure to prosecute is not an adjudication on the merits, and, therefore, courts are afforded greater discretion in dismissing claims in this manner.  Taylor, 251 F. App'x at 619; see also Coleman, 433 F. App'x at 719; Brown, 205 F. App'x at 802–03.

While the Court exercises its discretion to dismiss cases with caution, dismissal of this action without prejudice is warranted.  See Coleman, 433 F. App'x at 719 (upholding dismissal without prejudice for failure to prosecute § 1983 complaint where plaintiff did not respond to court order to supply defendant's current address for purpose of service); Taylor, 251 F. App'x at 620–21 (upholding dismissal without prejudice for failure to prosecute, because plaintiffs insisted on going forward with deficient amended complaint rather than complying or seeking an extension of time to comply with court's order to file second amended complaint); Brown, 205 F. App'x at 802–03 (upholding dismissal without prejudice for failure to prosecute § 1983 claims where plaintiff failed to follow court order to file amended complaint and court had informed plaintiff that noncompliance could lead to dismissal).

Plaintiff failed to follow this Court's Order or to otherwise respond to Defendants' Motion, despite having ample opportunity to do so, including two extensions, and being forewarned of the consequences of his failure to do so.  Doc. 60 (Notice, dated Jan. 13, 2021, informing Plaintiff if he failed to respond, judgment could be entered against him without further proceedings); Docs. 64, 72.  Thus, the Court should **DISMISS** Plaintiff's Amended Complaint, doc. 11, for failure to follow this Court's Order and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.[6]

---

[6]  Because Plaintiff's claims against Defendants Jones, Rozier, and Lowe are due to be dismissed for failure to exhaust his administrative remedies and failure to follow this Court's Order, the Court declines to address Defendants' additional summary judgment arguments.

### III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and Defendants' construed Motion to Dismiss and for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT as unopposed** Defendants' construed Motion to Dismiss, **DISMISS** Plaintiff's Amended Complaint for failure to exhaust available administrative remedies and for Plaintiff's failure to follow this Court's Order, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 3rd day of March, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA